IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| LURINE MASSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 16-cv-2409-TMP |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Before the court is plaintiff Lurine Massey's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying her application for disability insurance benefits under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*. On September 9, 2016, the parties consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 13.) For the reasons set forth below, the decision of the Commissioner is affirmed.

**I.   PROCEDURAL HISTORY**

On February 23, 2010, Massey applied for disability benefits under Title II and Title XVI of the Act, alleging

---
[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed.

disability beginning on January 5, 2010. (R. at 63.) The Social Security Administration ("SSA") denied these claims initially and upon reconsideration. (Id.) At Massey's request, a hearing was held before an Administrative Law Judge ("ALJ") on November 9, 2011. (Id.) On December 28, 2011, the ALJ denied Massey's request for benefits after finding that she was not under a disability because she retained the residual functional capacity ("RFC") to perform past relevant work. (R. at 63–67.)

On February 25, 2013, Massey reapplied for disability benefits under Title II of the Act. (R. at 207.) On May 1, 2013, she reapplied for disability benefits under Title XVI of the Act. (R. at 209.) Initially, she alleged disability beginning on January 6, 2010, but she now alleges disability beginning on December 29, 2011, due to lower lumbar pain, high blood pressure, knee pain in both knees, and impaired eyesight. (R. at 33, 207, 209, 228.) Massey's last date insured was December 30, 2015. (R. at 225.) The SSA also denied these applications initially and upon reconsideration. (R. at 78, 92, 121, 139.) Massey requested and received a second hearing before an ALJ on December 2, 2014. (R. at 27.) On February 18, 2015, the ALJ issued a decision denying Massey's request for benefits after finding that Massey was not under a disability because she retained the RFC to perform past relevant work. (R. at 8–26.) On May 16, 2016, the SSA's Appeals Council denied

Massey's request for review. (R. at 1.) Therefore, the ALJ's decision became the final decision for the Commissioner. (Id.) Subsequently, on June 13, 2016, Massey filed the instant action. (ECF No. 1.) Massey argues that the ALJ's determination that she could return to previous work is unsupported by substantial evidence because the ALJ should have given more weight to the RFC assessment provided by her treating physician, David K. Jennings, M.D., and less weight to the opinions of the state examiners and evaluators. (ECF No. 16 at 3–8.)

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she or he was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Burton v. Comm'r of Soc. Sec., No. 16-4190, 2017 WL 2781570, at *2 (6th Cir. June 27, 2017); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r

of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525,

528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

**B.  The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1).  Additionally, section 423(d)(2) of the Act states,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011).  The initial

-5-

burden is on the claimants to prove they have a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed

impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

**C. ALJ's Step Four Determination**

As a preliminary matter, the court notes that the ALJ's determination was restrained by the principles of res judicata due to the presence of the prior disability determination. Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 842-43 (6th Cir. 1997). Consequently, the ALJ could only alter the prior decision if Massey presented proof of "changed circumstances." Id.; AR 98-4(6), 1998 WL 283902, at *3 (S.S.A. June 1, 1998) ("[A]djudicators must adopt such a finding from the final

decision by an ALJ . . . unless there is new and material evidence relating to such a finding . . . .").

Turning to the facts in this case, in his opinion, the ALJ considered the medical records provided by Massey, Massey's subjective description of her symptoms, and the testimony of a vocational expert. The ALJ determined that Massey had the RFC to perform medium work as defined by 20 C.F.R. §§ 404.156(c) and 416.967(c) with the physical limitations that she could only "frequently climb, balance, stoop, kneel, crouch, and crawl," and the mental limitation that she could perform "simple and low-level detailed tasks." (R. at 17.) The ALJ concluded that Massey was capable of returning to past relevant work as a hand packer and store laborer. (R. at 21.)

1. Weight of Dr. Jennings's Opinion

Massey argues that, when making the RFC determination, the ALJ should have given Dr. Jennings's opinion greater weight. On June 2, 2014, Dr. Jennings filled out a RFC evaluation consisting primarily of boxes that he checked to indicate that Massey had severe exertional, postural, and manipulative limitations. (R. at 579–81.) Dr. Jennings listed Massey's diagnoses as including chronic low back pain, cataracts, hypertension, hyperthyroidism, sciatica, and, possibly, a chronic pain disorder. (R. at 585.) He stated that he could provide no further assessment because Massy was relatively new

to his care. (Id.) This evaluation is the only item in Massey's records attributed to Dr. Jennings.

At the hearing, the ALJ noted the scarcity of information relating to Dr. Jennings and provided Massey with additional time to supplement the record with more information relating to Dr. Jennings. (R. at 30–31.) Massey did not provide any new evidence. (R. at 11.) Consequently, the ALJ gave Dr. Jennings's RFC determination no weight. The ALJ also pointed out that the opinion was markedly inconsistent with the objective evidence in the record. (R. at 19.)

Treating sources are accepted medical sources who have or have had an "ongoing treatment relationship" with a claimant. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The SSA deems a relationship to be an ongoing treatment relationship when a claimant has visited a treating source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." Id. The burden is on the claimant to prove that this relationship exists. See Grisier v. Comm'r of Soc. Sec., No. 17-3570, 2018 WL 417557, at *2 (6th Cir. Jan. 16, 2018); see also Sorrell v. Comm'r of Soc. Sec., 656 F. App'x 162, 169 (6th Cir. 2016) ("In steps one through four, 'the claimant bears the burden of proving the existence and severity of limitations caused by her impairments . . . .'" (quoting Jones

-9-

v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003))). Should the claimant meet this burden, the ALJ will then assess whether the treating source's opinion is consistent with the medical records and is well-supported by clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1257(c)(2), 416.927(c)(2). If it is, the ALJ will give the opinion controlling weight; if it is not, the ALJ will apply a set of regulatory factors to the opinion to determine what weight to give it. Id. ALJs will "always give good reasons" in their decisions for the weight that they gave the opinion of a treating source. Id.

Massey provided the ALJ with no evidence that Dr. Jennings had ever examined her, much less that he had examined her with sufficient frequency to render him a treating source. (R. at 11.) Thus, the court finds that the ALJ did not err by disregarding Dr. Jennings's opinion. See Grisier, 2018 WL 417557, at *2 (finding that a doctor was not a treating source because the doctor had only one consultative evaluation with a claimant); Pasco v. Comm'r of Soc. Sec., 137 F. App'x 828, 837–38 (6th Cir. 2005) (upholding an ALJ's decision to give no weight to a medical source's opinion when the claimant's record contained no "office notes or other treatment records" from the medical source and the source's opinion lacked any objective basis for support).

### 2. Weight of State Medical Source Opinions

Massey argues that, when making the RFC determination, the ALJ should not have given great weight to the opinions of the state examiners, who had little contact with her, and the state consultants, who did not have access to her complete medical records. On June 28, 2013, and December 2, 2013, Heather Gammel, Ph.D., examined Massey's mental condition. (R. at 478, 570.) It is unclear from Dr. Gammel's opinion whether she had access to a complete set of Massey's medical records, but she appears to have reviewed a substantial portion of the records. (R. at 478, 480, 570–73.) After the first examination, Dr. Gammel concluded that Massey "demonstrated extremely poor effort," which impeded Dr. Gammel's ability to accurately assess her condition. (R. at 481, 482.) After the second examination, Dr. Gammel determined that Massey's mental conditions mildly impaired her abilities to understand work-related instructions and adapt to changes in the work place and moderately impaired her abilies to concentrate and interact with others. (R. at 573.) The ALJ noted that the opinion was the product of a thorough examination. Although the ALJ did not explicitly state what weight he assigned this opinion, he appears to have given

it substantial weight because he incorporated a number of the limitations into Massey's RFC.[2] (R. at 20.)

On July 1, 2013, state medical examiner Linda Yates, M.D., examined Massey's physical condition. (R. at 486.) Dr. Yates concluded that Massey had the physical ability to sit four to six hours in an eight-hour work day, stand and walk one to three hours in an eight-hour work day, and lift and carry five to ten pounds. (R. at 490.) However, Dr. Yates clarified that her assessment of Massey was limited by her lack of access to Massey's full medical records and Massey's "restricted efforts" to participate in the exam. (Id.) In light of this clarification, Massey's sparse history of treatment for several of her conditions, and the minimal clinical findings in the records, the ALJ found Dr. Yates's opinion overly restrictive. (R. at 19.)

On December 5, 2013, state medical consultant Frank Kupstas, Ph.D., reviewed Massey's mental health records and concluded that Massey had a number of moderate limitations on her ability to interact with others and adapt to change in the workplace. (R. at 135-36.) On November 14, 2013, Frank Pennington, M.D., determined that Massey had a few exertional

---

[2] Noto v. Comm'r of Soc. Sec., 632 F. App'x 243, 249-50 (6th Cir. 2015) (finding it harmless error that an ALJ did not explain the weight assigned to a treating source since the ALJ incorporated the source's opinions into the RFC).

limitations that would not significantly impact her ability to work. (R. at 133–34.) The ALJ noted that the new medical evidence obtained after these opinions were formed would not have altered the opinions. Because of the evidentiary support for these opinions, the ALJ gave the opinions great weight. (R. at 20.)

ALJs employ a "sliding scale of deference" for medical opinions depending upon the opinion's source. Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012). Opinions from treating sources typically merit the most deference. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). For this reason, as discussed above, if an ALJ gives a treating source's opinion less than controlling weight, she or he must give "good reasons" for doing so. Austin v. Comm'r of Soc. Sec., 714 F. App'x 569, 573 (6th Cir. 2018). However, ALJs do not have the same obligation when weighing medical opinions from non-treating sources. See Martin v. Comm'r of Soc. Sec., 658 F. App'x 255, 259 (6th Cir. 2016) (finding that ALJs are exempted from the "reasons-giving requirement" when weighing medical opinions from non-treating sources); Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 273 (6th Cir. 2015); Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007). But see SSR 96-8p, 1996 WL 374184, *7 (S.S.A. July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC

assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); SSR 96-5p, 1996 WL 374183, *5 (S.S.A. July 2, 1996) ("Adjudicators must weigh medical source statements under the rules set out in 20 [C.F.R. §§] 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions."). The ALJ must still consider various factors when weighing these opinions, such as the evidence upon which the non-treating sources' opinions are based and the opinions' consistency with the medical record, even if the ALJ does not have to document this analysis. 20 C.F.R. §§ 404.1527(c)(2)-(6); 416.927(c)(2)-(6).

Regarding the opinions from the examining sources, the court finds that the ALJ properly weighed these opinions. First, the ALJ was not required to explain the basis of the weight he gave these opinions. See Martin, 658 F. App'x at 259. Second, the ALJ's reliance upon Dr. Gammel's opinion was justified due to the thoroughness of the exam upon which the opinion was based. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); 20 C.F.R. § 416.927(c)(3). Third, the ALJ's reason for giving Dr. Yates's opinion little weight, that it was inconsistent with other

opinions, was a valid basis for discounting the opinion. See 20 C.F.R. § 404.1527(c)(4)("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); 20 C.F.R. § 416.927(c)(4); Justice v. Comm'r Soc. Sec. Admin., 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins.").

The court also finds that the ALJ properly weighed the opinions of the non-examining sources. Despite the fact that ALJs do not have to give good reasons for the weight they assign to the opinions of non-treating sources, when an ALJ gives more weight to the opinion of a non-examining source who did not review a claimant's complete case record than to later opinions from other medical sources who typically merit more deference, the ALJ must provide "some indication that the ALJ at least considered" the date of the non-examining source's opinion. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 834 (6th Cir. 2016) (quoting Blakley v. Comm'r Of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009)). Here, the ALJ indicated that he had considered when the opinions were written by stating that the new evidence acquired after the state consultants' opinions were written would not have altered the opinions. The only sources to opine about Massey's condition at a later date than the non-examining sources were Dr. Gammel and Dr. Jennings. The opinion of the

former corresponds with the opinion of the state consultant. The opinion of the latter merits no weight for the reasons described in the previous section. Therefore, the court finds that the ALJ complied with procedural requirements when weighing the opinions of the various medical sources in Massey's records and that the weight he gave these opinions was supported by substantial evidence. Accordingly, the ALJ's step-four determination was supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision that Massey is not disabled is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

April 17, 2018
